IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Emily Tobias Profitt, | : | Case No. 1:06-cv-759 |
| | : | |
| Plaintiff, | : | District Judge Susan J. Dlott |
| | : | |
| v. | : | ORDER GRANTING IN PART AND |
| | : | DENYING IN PART DEFENDANT'S |
| Butler County Board of Mental Retardation | : | MOTION FOR SUMMARY |
| and Developmental Disabilities, | : | JUDGMENT AND GRANTING |
| | : | PLAINTIFF'S MOTION FOR |
| Defendant. | : | PARTIAL SUMMARY JUDGMENT |

This matter comes before the Court on Defendant's Motion for Summary Judgment (doc. 20) and Plaintiff's Motion for Partial Summary Judgment for Breach of Contract (doc. 29). Plaintiff Emily Tobias Profitt has sued her former employer, Defendant Butler County Board of Mental Retardation and Developmental Disabilities ("the Board" or "MRDD"), asserting claims for age and gender discrimination and breach of contract. MRDD now seeks summary judgment as to all of Profitt's claims and Profitt seeks summary judgment as to her breach of contract claim only. For the reasons that follow, the Courts **GRANTS** summary judgment to MRDD as to part of the age discrimination claim only, **DENIES** summary judgment to MRDD as to all other claims, and **GRANTS** summary judgment to Profitt on the breach of contract claim.

I. **BACKGROUND**

A. **Factual History**[1]

Profitt was born on September 26, 1961. She has a bachelor of science in education

---

[1] Except where indicated, the statement of facts is taken from the parties' Proposed Undisputed Facts and Responses thereto. (Docs. 20-8, 38, 41-2, 45, 46.)

degree from Miami University, a master of arts degree from the Columbia University Teachers College, and a masters of education degree from Xavier University. Profitt began her employment at MRDD in the 1980's and it continued, except for a brief voluntary separation, until her last day of employment on December 31, 2005.

Profitt's final year of employment was governed by a one-year limited contract which ran from January 1, 2005 until December 31, 2005 and was "for the position of Manager of Training and Recruitment." (Profitt Dep. Ex. C.) Profitt's compensation was $54,901.59 per year plus benefits. The contract stated that Profitt "shall retain employment unless [she] is removed pursuant to [Ohio Revised Code] § 5126.23 or is laid off." (Id.) The contract also had a renewal provision which stated that the contract was renewed for a period of one year if the MRDD Superintendent did not notify Profitt of non-renewal in writing at least ninety days before the contract expired. (Id.)

In January 2005, Profitt's supervisor was Tanya Coffey (*nee* Garrett), the Director of Community Outreach and Human Resources at MRDD. (Coffey Dep. 6.) Profitt's last employment evaluation, dated January 2005 and signed by Coffey, indicated that she "me[t] expectations" in all five categories evaluated. (Profitt Dep. Ex. D.)

In the summer of 2005, MRDD managers and staff started to discuss anticipated state and federal funding cuts and financial shortfalls, and potential organizational changes to be made that might result in cost-savings. (Swaine Dep. 22-31 & Ex. 6; Hurr Dep. 16, 19 & Ex. 6; Coffey Dep. 26-30.) MRDD decided to eliminate Profitt's position of Manager of Training and Recruitment and create a new training position. MRDD managers testified that two factors played a role in the decision to eliminate Profitt's position: (1) a belief that housing the training

component of the position in the human resources department removed it too far from the needs

of the other departments; and (2) a belief that the recruitment component was clerical in nature

and did not require a management position to fulfill.  (Swaine Dep. Ex. 6; Hurr Dep. 19-20;

Coffey Dep. 29-30.)  The newly created position was called Training and Staff Development

Coordinator.  (Hurr Dep. 41-42 & Exs. 2, 3.)   The MRDD Board Meeting Agenda from the

November 10, 2005 meeting stated that move was "a result of a reorganization of the Board's

training needs."  (Doc. 20 Ex. 3.)

        Unlike the Manager of Training and Recruitment position, the new position no longer

entailed responsibility for recruitment.  (Hurr Dep. Exs. 2, 3.)  The new position, however, added

the responsibility to "[l]iaison with providers to assist in identification of training needs."  (Id. at

42 & Ex. 3.)  Previously, in the old position, the training responsibility had involved only

internal MRDD training, whereas the new position was responsible for assessing the training

needs of the outside service providers.  (Id. at 43-44.)

        Christina Hurr, the MRDD Superintendent, had the responsibility to approve all

personnel actions.  She made the decision that Profitt would not be automatically transferred to

the new training position as part of the MRDD reorganization, but instead the new training

position would be opened up to other candidates.  (Id. at 23-24.)  Hurr testified that she was not

sure Profitt would be an "easy fit" in the new training position.  (Id.)  Hurr also testified that she

had heard some concerns about Profitt's performance from Coffey and Deb Gulley, the Program

Administrator at MRDD.  Hurr could not remember the specifics of Coffey's concerns, but she

stated that Gulley had been told by others at MRDD that Profitt was not an effective trainer.

(Hurr Dep. 30-32.)  Hurr testified that Gulley was not opposed to Profitt being placed in the new

position, but she also supported opening the position up to other candidates.  (Id.)

On September 19, 2005, Coffey informed Profitt about the forthcoming organizational changes.  Coffey and Profitt discussed that Profitt's position would no longer be considered a management position and would be moved from Human Resources to the Quality Assurance department.  It is disputed whether Profitt understood or should have understood after the September 19 meeting that she would not retain employment beyond December 31, 2005, the last day of her limited employment contract.

On or about October 7, 2005, Profitt received a memorandum from MRDD Superintendent Hurr.  The  memorandum stated that Hurr intended to ask the Board at its November or December meetings to formerly abolish the position of Manager of Training and Recruitment.  The memorandum also stated that Profitt would report to Debbie Gulley starting in October 2005.  Finally, the memorandum informed Profitt that her future employment was not guaranteed after her contract ended "because [MRDD did] not yet know what position [it would] need" and recommended that Profitt apply for vacant positions.  (Hurr Dep. Ex. 1.)

On November 10, 2005, the Board voted to abolish Profitt's position.  She received written notice of the action in a letter from Hurr dated November 28, 2005 which stated that "due to the abolishment of your position (Manager of Training and Recruitment) for reasons of economy and efficiency, a lay-off is necessary."  (Hurr Dep. Ex. 6.)  The letter stated that the lay-off was effective December 31, 2005.  (Id.)

Profitt applied for a Support Coordinator position and for the newly created Training and Staff Development Coordinator position at MRDD after she was told her employment was not guaranteed beyond December 31, 2005.  (Profitt Dep. 31-32.)  According to MRDD's written

4

policy, "the prime factor in making employment decisions is the qualifications of the applicant or employee."  (Doc. 41-3.)  Profitt interviewed for the Support Coordinator position along with other applicants a few weeks after receiving the October 7 memorandum.  (Profitt Dep. 40.)  All four members of the interviewing team were women over the age of forty, and three were older than Profitt.  MRDD hired Krystn Shopp, an outside candidate who was then 26 years old, for the position.  Each interviewer testified in an affidavit that the decision to hire Shopp was not motivated by Profitt's age or gender.  (Kearns Aff.; Koch Aff.; Perry Aff.; Sluss Aff.)  They stated that they recommended Shopp for the position based upon her knowledge of MRDD, her enthusiasm at the interview, and a review of her application and resume.  (Ids.)

On December 30, 2005, Profitt met with Hurr for an exit interview at which time Hurr raised concerns about Profitt's job performance.  Profitt testified that Hurr told her that she "only met expectations, that that [she] did not meet that the standards that [she] should achieve." (Profitt Dep. at 61.)  Hurr testified that she told Profitt that some people at MRDD had indicated that they preferred to do their own training rather than have Profitt provide the training.  Hurr testified that these people had indicated that they did not think that Profitt was effective at training.  (Hurr Dep. 30-31, 46-49.)  Hurr recommended that Profitt be prepared to explain at her interview for the newly created Training and Staff Development Coordinator position how she would improve if she obtained the new position.  (Profitt Dep. 61-62; Hurr Dep. 48-49.) According to Profitt, Hurr told her to be prepared to discuss how she "had changed" during any interviews with MRDD.  (Profitt Dep. at 60.)

Profitt cancelled her interview for new training position after speaking with Hurr.  Profitt was "shocked and distressed" by her meeting with Hurr, believed that she would be held to

"higher standard" than the other applicants, and did not think that she "had a chance for the job at that point." (Profitt Dep. 62-64.) MRDD hired Trish Musnuff, a woman who was older than Profitt, for the Training and Staff Development Coordinator position, upon the recommendation of the hiring committee. Profitt testified that Musnuff was qualified for the position.

Separate from the reorganization moves affecting Profitt, MRDD at the end of 2005 also eliminated a position held by Mark Miller, a male MRDD employee over the age of forty. Miller was not college-educated, but his positions at MRDD have been considered management positions. (Swaine Dep. 69.) Prior to December 2005, Miller was the Coordinator of Employment Services within the Adult Services Division of MRDD, a position engaged in planning activities, but situated on the provider side of the agency. (Coffey Dep. 77-78 & Ex. 14.) Planners at MRDD coordinate and plan services for individuals, while the providers provide the services. (Hurr Dep. 50-51.) After a change in Medicaid funding regulations, individuals at MRDD could not be involved in both the planning and provider aspects of the agency. (Coffey Dep. 78; Hurr Dep. 50-51.) Therefore, in or about December 2005, MRDD eliminated the Coordinator of Employment Services position and created a new position on the planning side of the agency. (Coffey Dep. 77, 84 & Ex. 14; Hurr Dep. 53.) Miller was placed in the new position, called the Contract Services Coordinator position, without having to apply for it. (Swain Dep. Ex. 5.) The written job description for the new position was different to emphasize the planning aspect of the position, but Miller performed most of same job functions in the new position as he had in the old. (Coffey Dep. 76-77; Hurr Dep. 53-54.) Miller did not retain the supervision he had maintained over two people in the Adult Services Program in the old position. (Coffey 82; Hurr 54-55.)

Finally, in August 2006, MRDD hired Stephen Wendland, a male under the age of forty, to fill another vacant Support Coordinator position.  (Coffey Dep. Ex. 12.)  MRDD had a written policy to consider all applications for a position to "remain active for one year from receipt." (Coffey Dep. 65-66 & Ex. 11.)  However, despite the fact that Profitt had applied for a Support Coordinator position approximately eight months earlier, MRDD did not consider Profitt for this position before hiring Wendland.  (Id. at 66-67.)

**B.      Procedural History**

Profitt initiated this suit against the Butler County MRDD on November 6, 2006.  In her Amended Complaint (doc. 15), she asserts state and federal statutory claims for age and gender discrimination and a state common law claim for breach of contract.  MRDD filed an Answer (doc. 16) denying liability.  MRDD filed a Motion for Summary Judgment as to all claims filed against it, and Profitt filed a Partial Motion for Summary Judgment as to the breach of contract claim only.

**II.      STANDARDS GOVERNING MOTIONS FOR SUMMARY JUDGMENT**

Federal Rule of Civil Procedure 56 governs motions for summary judgment.  Summary judgment is appropriate if "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  On a motion for summary judgment, the movant has the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986).

The movant may support a motion for summary judgment with affidavits or other proof

or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  The nonmoving party must "set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  The Court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Liberty Lobby, 477 U.S. at 249.  A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  Id. at 252.

## III.    ANALYSIS

### A.    Age Discrimination

Profitt asserts that MRDD violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and Ohio Revised Code ["O.R.C."] §§ 4112.02 and 4112.99. Because Ohio law parallels the ADEA, the Court analyzes the state and federal age discrimination claims together.  See Ercegovich v. Goodyear Tire and Rubber Co., 154 F.3d 344, 357-58 (6th Cir. 1998); McLaurin v. Fischer, 768 F.2d 98, 105 (6th Cir. 1985); Whitt v. Lockheed Martin Utility Serv., Inc., 209 F. Supp. 2d 787, 792 (S.D. Ohio 2002); Plumbers and Steam Fitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n, 66 Ohio St. 2d 192, 196, 421 N.E.2d 128,  132 (1981).  However, Ohio courts are not bound by federal caselaw when interpreting and applying Ohio discrimination laws.  Coryell v. Bank One Trust Co. N.A., 101 Ohio St. 3d 175, 179, ¶ 15, 803 N.E.2d 781, 786 (2004).

8

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a).  To establish a claim under the ADEA, a plaintiff-employee must show that "the protected trait (under the ADEA, age) actually motivated the employer's decision"–that is, the employee's protected trait must have "actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141 (2000) (quoting Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)).  The plaintiff may prove such a claim with direct evidence of the employer's discriminatory motive, or by the indirect, burden-shifting approach articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).[2]  Direct evidence is "evidence that proves the existence of a fact without requiring any inferences."  Rowan v. Lockheed Martin Energy Sys., Inc., 360 F.3d 544, 548 (6th Cir. 2004).  Profitt presents no direct evidence that MRDD unlawfully discriminated against her on the basis of her age, and thus she must rely on the indirect method.

Under the McDonnell Douglas analysis, a plaintiff must first prove a prima facie case of age discrimination.  Rowan, 360 F.3d at 547.  If the plaintiff meets her burden, then the employer must assert a nondiscriminatory reason for its employment decision.  Id. (citing LaPointe v. United Autoworkers Loc. 600, 8 F.3d 376, 379 (6th Cir. 1993)).  If the employer satisfies this burden of production, then the plaintiff must prove by a preponderance of the

---

[2]  The Supreme Court has assumed that the McDonnell Douglas burden-shifting framework applies to age-discrimination cases.  O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 311 (1996).

evidence that the employer's proffered reason was not its true reason but was, in fact, a pretext for decisions actually motivated by an unlawful bias against persons over the age of forty. Id.

To establish a prima facie case of age discrimination in relation to a termination of employment, a plaintiff must show (1) that she was a member of a protected age class; (2) that she suffered an adverse employment action; (3) that she was qualified for the position she held or applied for; and (4) that she was replaced by a younger worker or was treated differently than similarly situated younger employees. Bender v. Hecht's Dept. Stores, 455 F.3d 612, 620 (6th Cir. 2006); Cichewicz v. UNOVA Indus. Automotive Systems, Inc., No. 02-1831, 2004 WL 291178, *2 (6th Cir. Feb. 12, 2004). Profitt compares the abolishment of her position to a termination occurring as part of a reduction-in-force ("RIF"). In a RIF case, the plaintiff can establish a prima facie case without the need for a similarly-situated comparator with evidence of "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." Blair v. Henry Filters, Inc. 505 F.3d 517, 529 (6th Cir. 2007) (citation omitted). This Court is mindful that prima facie elements are "context dependent" and that the "key question is always whether, under the particular facts and context of the case at hand, the plaintiff has presented sufficient evidence to permit a reasonable jury to conclude that he or she suffered an adverse employment action under circumstances giving rise to an inference of unlawful discrimination." Id.

Profitt puts forth two theories of liability to support this claim. First, Profitt asserts that MRDD hired a substantially younger and less qualified person, Krystn Shopp, to fill the position of Support Coordinator for which Profitt had applied after her position was abolished. Profitt also contends that MRDD discriminated against her by hiring a significantly younger male,

Stephen Wendland, for the Support Coordinator position when it reopened in August 2006 without considering Profitt for the position in violation of its own policy. MRDD concedes that Profitt has established a prima facie case of age discrimination to the extent that she was passed over for the Support Coordinator position in favor of Krystn Shopp, a female under the age of forty.

MRDD offers as its legitimate, non-discriminatory reason for hiring Shopp that the four-member interview team determined that Shopp was the best candidate for the position. (Kerns Aff.; Koch Aff.; Perry Aff.; Sluss Aff.) Thus, the Court's analysis turns to whether Profitt can establish pretext. A plaintiff may establish pretext by showing that the employer's proffered reason for an employment decision had no basis in fact, did not actually motivate the transfer, or was insufficient to motivate the transfer. Kocsis v. Multi-Care Mgmt., Inc., 97 F.3d 876, 883 (6th Cir. 1996).

Profitt relies on MRDD's written policy that "the prime factor in making employment decisions is the qualifications of the applicant or employee." (Doc. 41-3.) Profitt contends that she was more qualified than Shopp for the position and thus that MRDD's purported reason for hiring Shopp had no basis in fact or that it did not actually motivate the decision.[3] The Sixth Circuit has acknowledged that "evidence of comparative qualifications may be probative of

---

[3] In her brief opposing MRDD's motion for summary judgment, Profitt argues pretext for her age and gender discrimination claims together. Her approach confused the issues. Profitt focuses her age claim solely on the fact that the Support Coordinator position she applied for was awarded first to a younger female, then to a younger male. (Doc. 41 at 12, 15.) Her gender discrimination claim arises from the fact that she was treated differently than a similarly situated male employee after each of them had their positions eliminated. To the extent that Profitt argues pretext based on the reasons her position was terminated or that she was not automatically transferred to the new position, those reasons relate only to the gender claim.

pretext." <u>Bender</u>, 455 F.3d at 626 (internal quotation and citation omitted).  Nonetheless,

"employers are generally free to choose among qualified candidates." <u>Id.</u> (internal quotation and

citation omitted).  The Court is not to "assess the general fairness of an employer's treatment of

long-time employees." <u>Wright v. Sears, Roebuck and Co.</u> 81 F. App'x 37, 43 (6th Cir. Nov. 10,

2003).  "The law does not require employers to make perfect decisions, nor forbid them from

making decisions that others may disagree with." <u>Hartsel v. Keys</u>, 87 F.3d 795, 801 (6th Cir.

1996).  The Sixth Circuit in <u>Bender</u> concluded the following about weighing qualifications

evidence:

> Whether qualifications evidence will be sufficient to raise a question of fact as to
> pretext will depend on whether a plaintiff presents other evidence of
> discrimination.  In the case in which a plaintiff does provide other probative
> evidence of discrimination, that evidence, taken together with evidence that the
> plaintiff was as qualified as or better qualified than the successful applicant,
> might well result in the plaintiff's claim surviving summary judgment.  On the
> other hand, in the case in which there is little or no other probative evidence of
> discrimination, to survive summary judgment the rejected applicant's
> qualifications must be so significantly better than the successful applicant's
> qualifications that no reasonable employer would have chosen the latter applicant
> over the former.  In negative terms, evidence that a rejected applicant was as
> qualified or marginally more qualified than the successful candidate is
> insufficient, in and of itself, to raise a genuine issue of fact that the employer's
> proffered legitimate, non-discriminatory rationale was pretextual.

455 F.3d at 626-27.

Profitt cannot establish pretext in regard to the hiring of Shopp for the Support

Coordinator position because she has not established even a genuine question of fact that she

was the more qualified candidate.  The Court cannot analyze Profitt's versus Shopp's

qualifications in a vacuum.  Profitt's argument suffers two fatal flaws in this regard.  First,

MRDD's general hiring policy does not define how qualifications are to be defined or weighed.

It only provides generally that a person's application, references, and personal interview will all

be considered as part of the hiring procedures. (Doc. 41-3.) Second, Profitt has not provided the Court with a copy of Shopp's resume or job application from which Shopp's objective qualifications could be evaluated or compared against Profitt's qualifications.

The MRDD written job description for the Support Coordinator position lists the following qualifications needed for the position:

> Associates or Bachelors Degree in human services or related field with emphasis in social work; minimum of five years experience in area of mental retardation and human services preferred; SSA certification from ODMR/DD; valid Ohio driver's license with acceptable driving abstract. Must be able to lift, carry, and move consumers, including children and adults, in a safe manner, according to in-service training.

(Coffey Dep. Ex. 10.) It is undisputed that Profitt had a bachelor's degree of science in education and master's degrees in art and education. Profitt had been employed by the MRDD, during two separate periods, for a total of approximately fifteen years when she applied for the Support Coordinator position. (Profitt Dep. 15-16.) She was qualified for the position.

Profitt seeks the Court to draw negative inferences about Shopp's qualifications by the fact that Shopp was younger and had no prior work history at MRDD. However, MRDD offers the affidavit testimony of the interview team members who concluded that Shopp was qualified, enthusiastic, and knowledgeable about the MRDD field and the service delivery system in Ohio. (Kearns Aff.; Koch Aff.; Perry Aff.; Sluss Aff.)[4] Profitt offers no objective evidence to refute their testimony or which would suggest that Shopp did not meet the minimum qualifications stated on the job description. In fact, Profitt admits that she has no basis to believe that Shopp was not qualified for the position. In sum, Profitt has not put forth affirmative evidence that she

---

[4] Three of those same interviewers questioned whether Profitt was seriously interested in the position after she interviewed. (Koch Aff.; Perry Aff.; Sluss Aff.)

was significantly, or even marginally, better qualified for the Support Coordinator position than Shopp. She has failed to prove by a preponderance of the evidence that MRDD's stated reasons for hiring Shopp over her were pretextual. See Rowan, 360 F.3d at 547 (explaining burden of proof). MRDD is entitled to summary judgment on the age discrimination claim to the extent it is based on the hiring of Shopp over Profitt for the Support Coordinator position.

However, Profitt's age claim survives the motion for summary judgment to the extent it is based on MRDD's failure to hire her for the Support Coordinator position when it became open again in August 2006. MRDD's written policy was to consider all applications for a position to "remain active for one year from receipt." (Coffey Dep. 65-66 & Ex. 11.) However, MRDD did not consider Profitt for this position before it hired Stephen Wendland, a male younger than the age of forty. (Id. at 66-67 Ex. 12.) These facts are sufficient to establish a prima facie case of age discrimination. "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981).

MRDD does not offer a non-discriminatory reason to support its hiring decision. Tanya Coffey testified that MRDD did not consider Profitt for this open position, but she did not know why. (Coffey Dep. 66-67.) MRDD does not attempt to explain Coffey's testimony or to explain the hiring decision. "[T]o survive summary judgment a plaintiff need only produce enough evidence to support a prima facie case and to rebut, but not to disprove, the defendant's proffered rationale." Blair, 505 F.3d at 532. MRDD has failed to proffer any rationale to refute the inference of discrimination that arises from the prima facie case. Accordingly, summary judgment is denied to MRDD on the age discrimination claim to the extent the claim is based on

14

the August 2006 hiring of Wendland for the Support Coordinator position for which Profitt had applied approximately eight months earlier.

**B.     Gender Discrimination**

Profitt also asserts claims for gender discrimination in violation of Title VII, 42 U.S.C. § 2000e-2, and O.R.C. §§ 4112.02 and 4112.99.  Profitt does not have direct evidence of discrimination, so she must prove her claim using the McDonnell Douglas indirect proof scheme explained in the previous subsection.  To establish a gender discrimination claim under Title VII or the Ohio Revised Code, Profitt must show that: (1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) she was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably.  Peltier v. United States, 388 F.3d 984, 987 (6th Cir. 2004).  Only the fourth element of the prima facie case is disputed.

Profitt's gender discrimination claim is based on two discrete sets of facts.  First, Profitt contends that MRDD treated her differently than they treated Mark Miller, an MRDD employee who was automatically transferred to a new position at the Board when his position was eliminated.  Second, Profitt alleges gender discrimination in regards to the August 2006 hiring of Wendland for the Support Coordinator position.  Starting with the latter allegation, Profitt's gender discrimination claim based on the hiring of Wendland survives summary judgment for the same reason the age discrimination claim based on the same facts survived.  Profitt has established a prima facie case, and MRDD has failed to offer any non-discriminatory reason for the hiring decision to refute the inference of discrimination.  MRDD's summary judgment motion must be denied in part.

15

In contrast, MRDD vigorously contests the claim to the extent it is based on a comparison between how MRDD treated Profitt versus how it treated Miller.  MRDD asserts that Miller was not similarly situated to Profitt.  MRDD raises three factors which it asserts prevent Miller from have been similarly situated to Profitt as a matter of law: (1) Profitt and Miller had different supervisors; (2) Miller was transferred to a new position to accommodate a Medicaid regulation on the separation of planning positions from provider positions, while Profitt's position was formally abolished as part of a broader reorganization of the MRDD to accomplish efficiency and cost-savings; and (3) the job responsibility changes from Miller's old position to his new position were minor, while the new training position greatly expanded upon training responsibilities of Profitt's old position.

The Court finds that, even if the distinctions raised by MRDD are factually accurate, Profitt has raised at least a genuine issue of fact regarding whether she and Miller were similarly situated.  To begin, MRDD's asserted distinctions between Profitt's and Miller's situations do not undermine the essential similarities between their situations.  MRDD eliminated the positions held by both Profitt and Miller at the end of 2005.  MRDD then transferred at least some core functions of the old positions, training functions in regard to Profitt's position and planning functions in regard to Miller's position, to newly created positions.  (Coffey Dep. 76-77 & Ex. 14; Hurr Dep. 41-42, 53-54 & Exs. 2, 3.)  MRDD placed Miller in the newly created planning position automatically, while MRDD opened up the newly created training position to new applicants and told Profitt that her employment was not guaranteed.  In his manner, MRDD treated Miller more favorably than it treated Profitt.

As to first factor raised by MRDD, the Court questions the significance of the fact that

16

Profitt and Miller had different supervisors. MRDD cites <u>Gray v. Toshiba America Consumer Prods, Inc.</u>, 263 F.3d 595 (6th Cir. 2001), for the proposition that a comparator employee is similarly situated to a plaintiff only if both employees "have dealt with the same supervisor." <u>Id.</u> at 599. <u>Gray</u> specifically addressed the similarly situated issue in the context of how an employer disciplined different employees–<u>Gray</u> does not provide a complete statement of the law in this Circuit on when employees are similarly situated. The Sixth Circuit also has instructed as follows:

> [Courts] . . . should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee. The plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered "similarly-situated;" rather, . . . the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in all of the *relevant* aspects.

<u>Ercegovich</u>, 154 F.3d at 352 (internal quotation and citation omitted). Here, it is likely not relevant that Profitt and Miller had different supervisors because each held unique positions with the Board. Discrimination laws protect employees holding unique positions within their organizations despite the fact that they likely will not have had the same supervisors or the same responsibilities as another employee. <u>Ercegovich</u>, 154 F.3d at 353.

Also, the third factor asserted by MRDD, the nature of the changes between Miller's old and new positions versus nature of the changes between Profitt's old position and the new training position, seems particularly appropriate for jury consideration given that it involves assigning value or weight to the evidence. The Court cannot conclude on the evidence before it that no reasonable jury could find that Profitt and Miller were similarly situated. Thus, Profitt has established a prima facie case sufficient to withstand summary judgment.

Though the Court analyzes the Miller argument as part of the establishment of Profitt's prima facie case, Profitt also presents the Miller argument as part of her pretext argument. MRDD states that Miller was placed in the new planning position automatically because the change to his position was more clerical in nature and necessary only to satisfy the new Medicaid regulations.  Profitt focuses not on the reason for the changes, but instead on the fact that both employees' former positions were eliminated around the same time and only Miller was placed automatically to a newly created position.  Again, the Court cannot conclude at this time that no reasonable jury could find that MRDD's reasons for treating Miller and Profitt differently were pretextual.

Moreover, Profitt offers additional evidence of pretext.  Multiple MRDD executives testified that the Profitt's position was abolished as part of Board-wide organizational changes designed to increase efficiency and improve cost-savings.  (Swaine Dep. 22-31 and Ex. 6; Hurr Dep. 16, 19 and Ex. 6; Coffey Dep. 26-30.)  The November 28, 2005 letter to Profitt informing her that her position had been officially abolished and that her employment was being terminated stated that the position was abolished "for reasons of economy and efficiency."  (Hurr Dep. Ex. 6.)[5]  Profitt contends that this stated reason is either false or not the real reason her employment ended.  Profitt points out that Trish Musnuff, who was hired to fill the newly created Training and Staff Development Coordinator position, had a higher salary than Profitt had in the abolished position.  (Doc. 41 Ex. I.)  Additionally, MRDD Superintendent Hurr raised performance issues with Profitt for the first time at her exit interview, despite the fact that

---

[5] Based on this testimony, the Court cannot understand the statement in MRDD's reply brief that "[t]here was not testimony of any Board employees that plaintiff's job abolishment was to reduce overall expenses or to reduce the number of employees."  (Doc. 44 at 3.)

Profitt's last written evaluation had been favorable. Thus, after justifying to Profitt that the reorganization was being driven by MRDD's broader needs, Hurr intimated at the exit interview that MRDD might have acted due to performance concerns. A reasonable jury could find pretext given these facts. The Court will deny summary judgment to MRDD on the gender discrimination claim.

## C.    Breach of Contract Claim

Both Profitt and MRDD move for summary judgment as to Profitt's breach of contract claim. Profitt's employment was governed by a one-year limited contract ran from January 1, 2005 until December 31, 2005. (Profitt Dep. Ex. C.) The contract specifically designated that Profitt served in the position of Manager of Training and Recruitment. (Id.) The contract had a renewal provision which provided as follows:

> NOTICE OF NON-RENEWAL (Limited Contracts Only)
> The Superintendent shall notify the Employee, no later than 90 days prior to the expiration of this Contract, whether the Board intends to renew the contract of the Employee. The failure of the Superintendent to notify the Employee in writing, no later than ninety (90) days prior to the expiration of the Contract, of the Superintendent's intent not to renew this Contract will result in an extension of this Contract for one year at the same salary plus any authorized salary increases, after which this Contract shall terminate. A contract non-renewal is not discipline of the Employee, is not a removal, suspension, or demotion of the Employee, is not for "cause," and no reason need be given for such non-renewal.

(Id.) This contract term incorporated the requirements of O.R.C. § 5126.21(A)(1) for all management employees of county boards of mental retardation and developmental disabilities.[6]

---

[6] The statute provides in relevant part as follows:

Each management employee of a county board of mental retardation and developmental disabilities shall hold a limited contract for a period of not less than one year and not more than five years, except that a management employee hired after the beginning of a program year may be employed under a limited

The contract, however, provided the additional protection that the notice of non-renewal be given in writing. (Profitt Dep. Ex. C.) The writing requirement is not stated in the statute. O.R.C. § 5126.21(A)(1). Other provisions of the contract reflected different provisions of O.R.C. Chapter 5126, including the employee discipline provision which mirrored O.R.C. § 5126.23.

Profitt's limited employment contract by its terms expired on December 31, 2005 unless it was automatically renewed. Ninety days prior to the expiration of the contract, or the last day for the Superintendent to provide notice of non-renewal to Profitt in writing, was October 3, 2005. If the MRDD Superintendent failed to timely provide the required notice, then Profitt's contract for employment in the position of Manager of Training and Recruitment continued for a term of one-year until December 31, 2006 at the same salary.

It is undisputed that Tanya Coffey, Profitt's supervisor, told her in September 2005 that MRDD was changing or eliminating her position. However, Coffey was not the MRDD Superintendent and she did not state in writing that Profitt's contract was not being renewed. The September 2005 discussion, therefore, did not qualify as notice of non-renewal under the contract. When MRDD Superintendent Hurr informed Profitt in a memorandum dated October 7, 2005 that she would recommend that the Board formally abolish Profitt's position and that

---

contract expiring at the end of the program year. The board shall approve all contracts of employment for management employees that are for a term of more than one year. A management employee shall receive notice of the superintendent's intention not to rehire the employee at least ninety days prior to the expiration of the contract. If the superintendent fails to notify a management employee, the employee shall be reemployed under a limited contract of one year at the same salary plus any authorized salary increases.

O.R.C. §5126.21(A)(1).

Profitt's future employment beyond December 31, 2005 was not guaranteed, the October 3, 2005 deadline for providing notice of non-renewal had passed. Profitt's contract already had been renewed by operation of law and Profitt's employment as Manager of Training and Recruitment for MRDD was contractually guaranteed at her previous salary through December 31, 2006. MRDD's actions after October 3, 2005 to abolish the position and terminate Profitt amounted to a breach of contract.[7]

MRDD argues that the limited contract was not violated because MRDD was not required to provide notice of non-renewal in situations where the employee's position was being abolished. However, MRDD provides no legal authority for this position and it is not supported by the terms of the written contract. The written contract provides no such exception to the automatic renewal provision. The contract simply states that "the failure of the Superintendent to notify the Employee in writing, no later than ninety (90) days prior to the expiration of this Contract, of the Superintendent's intent not to renew this Contract will result in an extension of this Contract for one year." (Profitt Dep. Ex. C.) The Court will not read such an expansive exception into the limited contract because to do so would eviscerate the protections of the

---

[7] The Court's conclusion is supported by, but not dependent on, Donaldson v. Athens City School District Bd. of Educ., 68 Ohio St.3d 145, 624 N.E.2d 709 (1994). In that case, a similar statutory provision, O.R.C. § 3319.02, governed the plaintiff's employment and provided that his term of employment was renewed unless "on or before last day of March" the board of education "[gave] him written notice of its intention not to reemploy him." The board did not give timely notice of non-renewal on or before the last day of March, but instead informed the plaintiff in July that his position was being abolished in a reduction-in-force. Donaldson, 68 Ohio St.3d at 147. The board of education argued that O.R.C. § 3319.02 did not apply in situations where a position was abolished due to a reduction-in-force. Id. at 148. The Ohio Supreme Court disagreed and held that "Donaldson was reemployed by operation of law under R.C. 3319.02(C) before any reduction in force occurred."

limited contract.  MRDD could abrogate the automatic renewal provision and terminate

management employees at-will after their contracts had automatically renewed simply by voting

to abolish their current positions.

Accordingly, the Court will grant summary judgment to Profitt, and deny summary

judgment to MRDD, as to the breach of contract claim.

**IV.     CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment (doc. 20) is

**GRANTED IN PART AND DENIED IN PART** and Plaintiff's Motion for Partial Summary

Judgment for Breach of Contract is **GRANTED**.  Summary judgment is granted to Defendant as

to Plaintiff's age discrimination claim to the extent it is based on MRDD's hiring of Krystn

Shopp for the Support Coordinator position.  Summary judgment is denied to Defendant as to all

other claims.  Finally, summary judgment is granted to Plaintiff as to the breach of contract

claim.

IT IS SO ORDERED.


_____s/Susan J. Dlott_____
Susan J. Dlott
United States District Judge